## HILL, FONTAINE & CO. V. COOLIDGE.

1. TRUSTS: *Property into which trust funds are converted, held subject to the trust.* Leonidas Johnson executed to Horner a deed of trust on his claim probated against the estate of Thomas Johnson, deceased, to secure a debt he owed to Coolidge, and left the claim with Horner. The deed was duly recorded. Afterwards the lands of the deceased were sold by order of the Probate Court, and part of them were purchased by Leonidas Johnson, who paid for it by receipting the administrator for the probated claim without the knowledge or consent of Coolidge. Afterwards Hill, Fontaine & Co. recovered judgment against Leonidas Johnson and had the land sold under execution to satisfy it, and at the sale bought the land. Held; that the trust on the claim followed and attached to the land into which the claim was converted,

2. BONA FIDE PURCHASER: *Notice.*
A purchaser at his own execution sale is not an innocent purchaser. The question of notice does not arise in such case.

APPEAL from *Phillips* Circuit Court, in Chancery.

Hon. J. N. CYPERT, Circuit Judge.

*Palmer—Rose* for appellant.

*Tappan & Horner,* contra.

HARRISON, J.:

This was an action in equity by Charles R. Coolidge, as sur-- viving partner of the firm of H. P. Coolidge & Co., against Hill, Fontaine & Co., Leonidas L. Johnson, George E. John- son, Mathias C. Hall and John J. Horner.

The material averments of the complaint were : That Leon idas L. Johnson and George E. Johnson, on the 17th day of July, 1871, conveyed to John J. Horner, by their deed of that date, their several crops of cotton and corn then growing on their respective plantations in Phillips county ; and the said George E. Johnson, the mules, farming implements and certain other personal property on his plantation ; and the said Leon- idas L. Johnson also conveyed and transferred to him the fol- lowing claims that had been probated and allowed by the court of probate of Phillips county against the estate of Thomas P. Johnson, deceased, and of which he was the assignee and owner, viz : Bartley, Johnson & Co. ; for $13,427.97 ; Thomas W. Stoneman ; for $2,019.23, and J. W. Roberts ; for $487.50 ; but which were described in the deed as the claim of said Leon- idas L. Johnson, probated against said estate, and in the hands of Tappan & Horner, in trust to secure to A. P. Coolidge & Co., their note to them of that date for $8,000, payable on the 1st day of December, 1871, and to bear ten per cent interest after maturity ; and the said Horner was, by said deed, em- powered, if the note was not paid at maturity, to take posses- sion of the property so conveyed, and after giving twenty days notice by publication in some newspaper printed in said county, to sell the same, including said claims, at the court house door in Helena, at public auction for cash, for the pay-

ment thereof : which deed was, on the 18th day of July, 1871, duly acknowledged and recorded.

That the Probate Court of said county, at the November term, 1871, made an order for the sale of the lands owned by said Thomas P. Johnson, at the time of his death, for the payment of his debts ; which lands were particularly described in the complaint, and of which there were 1,708 acres ; and in pursuance of the order, Barty Turner, the administrator of said Thomas P. Johnson's estate, on the 15th day of January, 1872, offered the same for sale, and they were bid off and purchased by the said Mathias C. Hall and Leonidas L. Johnson— an undivided three-fourths part by Hall, and an undivided one-fourth part by Johnson—for the sum of $10,000.

That said Hall and Leonidas L. Johnson were the only creditors of Thomas P. Johnson's estate—Hall holding three-fourths of all the indebtedness, and Johnson one-fourth—Johnson's part consisting of the claims before mentioned ; and that they paid no money on their purchase, but gave in payment thereof receipts and acquittances to the administrator for their claims—the estate paying but a *pro rata* thereon of fifteen and one-third per cent—and that the administrator on the same day executed a deed for an undivided three-fourths part of the lands to Hall, and for an undivided one-fourth part to said Leonidas L. Johnson.

That to such use of the claims, H. P. Coolidge & Co., gave no consent, and were ignorant of the fact that they were so used until some time afterwards.

That Hill, Fontaine & Co., on the 23d day of May, 1872, recovered judgment against George E. Johnson and Leonidas L. Johnson in the Circuit Court of Phillips county for $1,838.38, upon which they afterwards sued out an execution and caused it to be levied on Leonidas L. Johnson's undivided part of the lands, which, was sold thereunder by the sheriff, and it was

bid off and purchased by said Hill, Fontaine & Co., for $11,000, and the sheriff afterwards, on the 10th day of November, 1873, executed to them a deed for the same.

That there remained due on the note $5,098.57, with interest from the 1st of April, 1874.

And that Henry P. Coolidge, who, with the plaintiff, composed the firm of H. P. Coolidge & Co., was dead.

The complaint prayed that a lien should be declared in favor of the plaintiff on the undivided part of the lands purchased by Leonidas L. Johnson at the sale by the administrator of Thomas P. Johnson, to the same extent and with like object and effect as that secured by the deed of trust upon the claims.

Hill, Fontaine & Co. filed a demurrer to the complaint, upon the ground that it did not set forth or show a cause of action, which, was overruled. They then filed an answer. and admitted everything alleged in the complaint, except that the claims were conveyed and transferred to Horner in the deed of trust, which, they denied.

The other defendants made no defense.

The cause was heard upon the complaint and the exhibits therewith, the answer of Hill, Fontaine & Co., and the sworn statement of James C. Tappan, admitted by consent, as a deposition in the cause, subject to proper objections for want of relevancy or competency.

The clause in the deed of trust in respect to the conveyance or transfer of the claims, is as follows :

"And the said Leonidas L. Johnson also hereby conveys to the said party of the second part, *his claim* probated against the estate of Thomas P. Johnson, deceased, and now in the hands of Tappan & Horner."

The statement of James C. Tappan was : That he drew the deed of trust, and that the property described in it as "his claim

probated against the estate of Thomas P. Johnson, deceased, and now in the hands of Tappan & Horner," were the allowances against said estate in favor of Bartley, Johnson & Co., Thomas W. Stoneman and J. W. Roberts, mentioned in the complaint, which had been before assigned in writing to Leonidas L. Johnson, and were then in their (Tappan & Horner's) hands for collection, and were the only claims against said estate in their hands, in which Leonidas L. Johnson had any interest.

That the order for the sale of the lands was obtained by him, and he attended the sale; and that he gave for Leonidas L. Johnson a receipt for the pro rata sum due on the claims, to the administrator, and the receipt and satisfaction of the claims was all the consideration paid by Leonidas L. Johnson in his purchase.

The court, upon the hearing, found that it was the intention of the parties to the deed of trust, that Leonidas L. Johnson should, and that he did, thereby convey and transfer the claims to Horner, and decreed that a lien upon the undivided fourth part of the lands resulted from Leonidas L. Johnson's purchase thereof with the claims in favor of the plaintiff, and now exists to the same extent and with like effect as that created by the deed of trust upon the claims.

Hill, Fontaine & Co. appealed.

It is conclusively shown by the evidence of Tappan, that the claims for which Leonidas L. Johnson receipted in the purchase of the lands, and which constituted the sole consideration, were included in the deed of trust, and it follows as a very clear proposition, that a trust in favor of H. P. Coolidge & Co., attached to the lands or the undivided part so purchased.

Judge Story says; "Wherever the property of a party has been wrongfully misapplied, or a trust fund has been wrong-

39

fully converted into another species of property, if its identity can be traced it will be held in its new form liable to the rights of the original owner or *cestui que trust*. The general proposition which is maintained both at law and in equity upon this subject is, that if any property in its original state and form is covered with a trust in favor of the principal, no change of that state or form can divest it of such trust, or give the agent or trustee converting it, or those who represent him in right, (not being *bona fide* purchasers for a valuable consideration without notice) any more valid claim in respect to it than they respectively had before such a change." 2 *Story's Eq. Jur.*, Sec. 1258; Ib., 1201; *Bisph. Eq.*, Secs. 80, 86; *Adam's Eq.*, 142, 143; *Osborne* v. *Graham*, 30 Ark., 66.

But it is contended for the appellants, that though, as between the parties to the deed of trust parol evidence might be offered to explain it, and show what property was conveyed, as to others such evidence was inadmissible, and the evidence of Tappan for that purpose should have been excluded from the consideration of the court, and that the deed of trust, so far as it related to the claims, was as to them void for uncertainty.

To this it may be answered that they purchased at their own execution sale, and therefore were not, nor do they claim to have been, innocent purchasers; and no question as to notice arises in the case.

Whether the deed was uncertain or not was no matter of theirs; they stood upon no better ground than Leonidas L. Johnson did, and hold the lands, as he did, charged with the trust.

The decree is affirmed.