## TENNANT v. WATSON.

### Opinion delivered December 9, 1893.

1. *Attachment—Prior equities.*

   The object of the statute providing for attachment to secure a debt (Mansf. Dig. sec. 324,) is to prevent subsequent alienations and incumbrances, not to cut off, destroy or affect the prior rights, equities or incumbrances of third persons.

2. *Registration of conveyances—Parol equities.*

   Mansf. Dig. sec. 671, which provides, in substance, that no bond or instrument for the conveyance of any real estate shall be valid unless filed for record, applies only to instruments of writing affecting real estate, and not to equitable rights therein which exist only in parol.

3. *Execution sale—Purchase by plaintiff.*

   A purchaser of property at a sale under execution in his own favor takes it charged with all the rights and equities, which exist only in parol, that might be asserted against the defendant in the execution.

Appeal from Miller Circuit Court.

RUFUS D. HEARN, Judge.

*L. A. Byrne* for appellants.

1. An order of general attachment binds the property of defendant from the day it is placed in the hands of the sheriff.  39 Ark. 97.

2. Davis' primary motive was to put the property out of the reach of his creditors, and the deed, being absolute on its face, placed the title in Humphrey. His creditors had a right to presume the property was his, and he was thus enabled to get credit on the faith of owning it, in which case Humphrey's creditors have a

right to subject it to their debts.　Waite, Fr. Conv. secs. 387, 389, 398 ; 10 Conn. 65 ; 55 Ark. 123 ; 50 *id*. 42 ; 34 N. J. Eq. 158 ; *ib*. 19.　The whole transaction was a fraud on creditors.　5 Lawson's Rights & Rem. sec. 3090.

3.　No man should, by the acts of others, be given a false credit.　2 Mason, 252 ; 28 Fed. Rep. 788 ; 1 Wade on Att. sec. 225.

4.　The deed to Davis was absolute ; nothing to put creditors or purchasers on notice.　The law is opposed to secret trusts.　Mrs. Davis is estopped ; for, by her negligence, she has misled the creditors of Humphrey to their prejudice.　55 Ark. 296; Mansf. Dig. sec. 671 ; 30 Ark. 111 ; 24 Fed. Rep. 609.

*Arnold & Cook* for appellee.

The deed of Mrs. Davis was recorded *before the sale*, and was notice to plaintiffs.　Mansf. Dig. sec. 671 ; 24 Fed. Rep. 609.　Plaintiffs had actual notice of Mrs. Davis' equities, before the sale.　But the continuous possession of Mrs. Davis was notice.　16 Ark. 543 ; *Ib*. 541. If plaintiffs had notice, actual or constructive, they were not innocent purchasers,　16 Ark. 543 ; *Ib*. 341 ; 30 *id*. 111 ; *Ib*. 249 ; 31 *id*. 21-2 ; 34 *id*. 85 ; 24 Fed. Rep. 609.

BATTLE, J.　This action was brought by Tennant, Walker & Company against Jesse Watson to recover the possession of a certain tract of land in Miller county. They based their right of action upon a deed executed by A. S. Blythe, as sheriff of Miller county, bearing date the 12th day of September, 1890.

Rhoda Davis, on her application, was made a defendant, and she and Jesse Watson answered and said, among other things, that Watson was not in the unlawful possession of the land ; that the defendant Davis and her husband, F. M. Davis, on the 27th of July, 1888, conveyed it to Thomas H. Humphrey to secure the pay-

ment of a debt of F. M. Davis to Humphrey for $200 ; that it was agreed by the parties, at the time, that the conveyance should only operate as a mortgage to secure the payment of the debt ; that, afterwards, on the 3rd day of January, 1889, the debt having been paid, Humphrey and his wife conveyed the land to the defendant Davis ; that, after the conveyance of Humphrey and wife, plaintiffs, on the 3rd day of January, 1889, caused an order of attachment in their favor, and against Humphrey, to be levied on the land ; that the attachment was sustained, and the land was ordered to be sold as the property of Humphrey, and was sold to the plaintiffs ; that the sheriff who made the sale executed the deed on which this action is based ; that the defendant Davis duly notified the plaintiffs, before and at the time the land was levied on, that she was the owner, and caused them to be notified of her claim at the sale.

The issues in the case were tried by a jury on the 23rd of June, 1891, and a verdict was returned, and a judgment thereon was rendered, in favor of the defendants ; and the plaintiffs appealed.

The facts of the case are substantially as follows : F. M. Davis, the husband of the defendant, Davis, was the owner of the land, and indebted to Humphrey in about the sum of $200. Being the owner, and indebted, he conveyed the land to Humphrey, by deed absolute on its face, to secure the payment of the indebtedness. Mrs. Davis redeemed the land by paying the debt, but took no deed, or assignment of the mortgage, until about two months thereafter, to-wit, on the 3rd day of January, 1889, when Humphrey and wife conveyed the land to her by deed, which was acknowledged and filed for record on the 11th day of January, 1889. In the meantime, appellants sued out an order of attachment against Humphrey, and caused it to be levied on the land on the 3rd day of January, 1889, at 4 o'clock P. M.

On the 11th of June, 1889, the court sustained the attachment, and ordered the land to be sold at public vendue. On the 20th of July, 1889, it was sold according to the order of the court, and appellants became the purchasers. Not having been redeemed, the sheriff conveyed it to them on the 12th day of September, 1890.

There was a cabin on the land, and about fifteen acres of it were cleared and in a state of cultivation. F. M. Davis testified in the trial that he was in possession of the land at the time he conveyed to Humphrey, and at all times since remained in possession, and had a tenant on it; and that when the land was sold he appeared and protested against the sale. The defendant Watson testified that he was "the tenant of Mr. Davis, and had lived on the land for the past three years, and made a crop on the place each year." He was on the place as Davis' tenant when the deed to Humphrey was executed.

Shall the judgment of the circuit court be affirmed?

The statutes of attachment provide that "the plaintiff in a civil action may, at or after the commencement thereof, have an attachment against the property of the defendant, * * * as a *security* for the satisfaction of such judgment as may be recovered." Mansfield's Digest, sec. 309. Section 325 of Mansfield's Digest provides that "an order of attachment binds the defendant's property in the county, which might be seized under an execution against him, from the time of the delivery of the order to the sheriff or other officer; and the lien to the plaintiff is completed upon any property or demand of the defendant by executing the order upon it in the manner directed in this chapter." But this lien is allowed for no purpose except that for which the attachment is allowed. It creates no estate in the property attached, nor divests prior rights or equities therein. "It is neither a *jus ad rem* nor a *jus in re*." The stat-

1. Attachment does not cut off prior equities.

utes, by making the attachment by which it is created a
security for the satisfaction of such judgment as may be
recovered, in effect, declare its only object to be to
secure the judgment by preventing subsequent aliena-
tions and incumbrances. It is no part of its office to cut
off, destroy, or affect the prior rights, equities, or incum-
brances of third persons. But on the contrary the stat-
ute under which it can be created provides : " Any
person may, before the sale of any attached property, or
before the payment to the plaintiff of the proceeds thereof,
or of any attached debt, present his complaint, verified
by oath, to the court, disputing the validity of the attach-
ment, or stating a claim to the property, or an *interest
in or a lien on* it under any other attachment *or other-
wise*, and setting forth the facts upon which such claim
is founded, and his claim shall be investigated." Mans-
field's Digest, sec. 356. And in this connection they
further provide : " The court may hear the proof, or
may order a reference to a commissioner, or may impanel
a jury to inquire into the facts. If it is found that the
claimant has a title to, a *lien on or any interest* in such
property, the court shall make such order as may be
necessary to protect his rights." Mansf. Dig. sec. 358.

But these rights, equities and incumbrances may
be such as can be lost through the neglect of the person
in whose favor they exist to comply with the statutes
upon registration, or by a *bona fide* purchaser for value,
and without notice, acquiring the property.

2. Statute of registration construed.      Section one of an act entitled "An act concerning
the recording of deeds," approved December 19th, 1846,
which is section 670 of Mansfield's Digest, declares that
" every deed, bond or instrument of writing, affecting
the title in law or equity to any property, real or per-
sonal, within this State, which is or may be required by
law to be acknowledged, or proved and recorded, shall
be constructive notice to all persons from the time the

same is filed for record in the office of the recorder of the proper county ; and it shall be the duty of such recorder to endorse, on every such deed, bond, or instrument, the precise time when the same is filed for record in his office." As a penalty for the failure to file such deed, bond, or instrument of writing for record, section two of the same act, which is section 671 of Mansfield's Digest, declares "that no deed, bond, or instrument of writing, for the conveyance of any real estate, or by which the title thereto may be affected in law or equity, hereafter made or executed, shall be good or valid against a subsequent purchaser of such real estate for a valuable consideration, without actual notice thereof ; or against any creditor of the person executing such deed, bond or instrument, obtaining a judgment or decree, which by law may be a lien upon such real estate, unless such deed, bond, or instrument, duly executed and acknowledged, or approved, as is or may be required by law, shall be filed for record in the office of the clerk and *ex-officio* recorder of the county where such real estate may be situated."

The latter section came up for construction in *Byers* v. *Engles*, 16 Ark. 543. That case was an action of ejectment, and the facts in it were as follows : The land in controversy was claimed by the plaintiffs as purchasers at a sale under execution. The defendant claimed under a deed from the defendant in the execution. The regularity of the sale was unquestioned. The defendant in the action of ejectment purchased the land sometime before the judgment under which the plaintiffs claimed as purchasers was rendered, and paid for it, and took a deed of conveyance, but failed to file it for record until after the execution was levied. He, however, filed it before the sale. About thirty acres of the land were cleared. There were no buildings on it. There were houses near the line, and on an adjoining

tract. He occupied these houses, and cultivated the land, and was in possession of it at the time the judgment was rendered, and so continued until after the sale under the execution, at which, "in an ordinary tone of voice, he declared that the land was his." Under these facts this court held that the plaintiffs had sufficient notice of the title of the defendant ; that it was given at the sale and by the possession ; that notice in either way was sufficient ; and that, "as a necessary consequence," the defendant's title, being "in all respects regular and of older date," must prevail over the title acquired by the plaintiffs.

In construing section 671 the court said that the object of the statute was to protect the innocent purchaser and creditor from fraud by secret conveyances and contracts; and held that the statute should be so construed as to affect this object, and at the same time never become an instrument of fraud, and that, upon such construction, judgment creditors and purchasers at sales under executions are, alike with subsequent purchasers and mortgagees, affected by notice of a prior unregistered deed or contract, touching real estate ; that notice is equivalent to registration as to all persons ; and that it is in time if given before the sale. In so holding the court said : "One of two alternatives is left us : we must either give such potency to the judgment lien, as to let it cut its way over all deeds, securities, or conveyances, whether in law or equity, that are not registered at the date of the judgment, wholly irrespective of notice, and thereby leave the statute, that was enacted to prevent fraud, an engine in the hands of sharpers in the law, to enable them to perpetrate it. In which event, the whole question of notice, whether to the creditor or the purchaser, is discarded, because all such titles are swept off as fraudulent, by the mere failure to put them of record, and the purchaser relies upon the perfect title,

thus communicated, by force of the lien. Or we must adhere to the liberal construction which, with a few exceptions, is universally given to such statutes; and hold that, as the sole purpose of the statute was to prevent fraud by secret conveyances, any notice given at any time before the fraud is perpetrated, as it accomplishes all that the statute was intended to accomplish, shall be. held as equivalent to registry notice. Under all the circumstances we think it safest to adopt the latter alternative. * * * * * * Up to the time of sale, * * * there would seem to be no necessity for giving notice to any one. But when the property is about to be sold, the creditor, as well as the purchaser, has a right to know what incumbrances there are upon it. Public policy requires this, to prevent a sacrifice of property, and the interest of the creditor in making his debt, as well as an assurance to the purchaser that he buys clear of all titles not made known to him at that time, requires it. And if notice of the prior incumbrance is not then given, as well to the creditor as the purchaser, the actual notice, substituted in the place of the registry notice, is not as broad and full; and, consequently, cannnot be received instead of such registry notice, and both the creditor and purchaser may rely upon the statute that declares all deeds, etc., of which notice is not given, void as against them. And although the purchaser at such sale, by virtue of the statute, gets a perfect title to the property purchased, free from all incumbrances, of which notice is not given, it is not because the lien attached in the first instance to a perfect unincumbered title, or that such title was in fact in the debtor at the time of sale, but because the first purchaser, notwithstanding his superior title, failed to give notice of it. Wherefore, it was, by force of the statute, swept off as fraudulent, and left

the title in the purchaser as perfect as if the prior conveyance had never been made."

The case of *Byers* v. *Engles* has been cited approvingly by this court in *Hornor* v. *Hanks*, 22 Ark. 580; *Peay* v. *Capps*, 27 Ark. 164; *Doswell* v. *Adler*, 28 Ark. 85; *Shinn* v. *Taylor*, *Ib.* 528; *Stirman* v. *Cravens*, 29 Ark. 561; *Jackson* v. *Allen*, 30 Ark. 115; *Pindall* v. *Trevor*, *Ib.* 267; *Apperson* v. *Burgett*, 33 Ark. 328, 336; *Williams* v. *McIlroy*, 34 Ark. 92; *Atkinson* v. *Ward*, 47 Ark. 540; *Watson* v. *Murray*, 54 Ark. 508. The titles in question in *Doswell* v. *Adler*, *Shinn* v. *Taylor*, *Jackson* v. *Allen*, *Apperson* v. *Burgett*, *Pindall* v. *Trevor*, and *Williams* v. *McIlroy*, were acquired at sales under executions, and the doctrine of *Byers* v. *Engles* was reaffirmed in them.

But *Allen* v. *McGaughey*, 31 Ark. 252, is in seeming conflict with this doctrine. The plaintiff in that case bought a large plantation, containing 1200 acres of land. A part of it was the south west quarter of section 11. It was described in the deed by which the plantation was conveyed to him as the south east quarter of section 11. When he bought the land, he paid the purchase money, and took possession of it. The defendant afterwards recovered a judgment against his grantor, and sued out an execution thereon, and caused it to be levied on the tract which was misdescribed; and the sheriff sold it under the execution, and, the defendant having purchased it, conveyed it to him by deed. The plaintiff then filed a bill to correct the mistake and set aside defendant's deed; and this court held that the defendant was not an innocent purchaser for value without notice, and that he purchased subject to all the equities of the plaintiff existing against the land at the time of the sale, and said: "The defendant claims as purchaser at execution sale, to which the rule *caveat emptor* applies. He gets no warranty of title by his

deed, but takes the estate encumbered with all the equities upon it at the time of his purchase, such, only, as the defendant in the judgment had, charged with all the equities that might be asserted against him ;" and that "no defense as an innocent purchaser without notice can be interposed by a purchaser at an execution sale."

*Allen* v. *McGaughey* was cited approvingly in *Pickett* v. *Merchants' National Bank*, 32 Ark. 369 ; *Williams* v. *McIlroy*, 34 Ark. 85 ; *Jones, McDowell & Co.* v. *Fletcher*, 42 Ark. 422; and *Wilson* v. *Slaughter*, 53 Ark. 137.

In *Pickett* v. *Merchants' National Bank*, the judge delivering the opinion of the court quoted approvingly what was said in *Allen* v. *McGaughey* about a sale under execution, and applied it to a purchase at a sale under a decree foreclosing a deed of trust. The purchaser contended that, at the time of the sale, the property sold was encumbered by taxes, which it was required to pay, and that the amount of the taxes should be deducted from its bid. In disposing of this contention, what was said in *Allen* v. *McGaughey* about purchasers at sales under executions was quoted ; and the court said that the property was encumbered "with unpaid taxes, and, as we presume, was *purchased for less on that account.*"

In *Hill, Fontaine & Co.* v. *Coolidge*, 33 Ark. 621, "Leonidas Johnson executed to Hornor a deed of trust on his claim probated against the estate of Thomas Johnson, deceased, to secure a debt he owed to Coolidge, and left the claim with Hornor. The deed was duly recorded. Afterwards, the lands of the deceased were sold by order of the probate court, and a part of them were purchased by Leonidas Johnson, who paid for them by receipting to the administrator for the probated claim without the knowledge or consent of Coolidge. After-

wards Hill, Fontaine & Co. recovered a judgment against
Leonidas Johnson, and had the land sold under the execu-
tion to satisfy it, and at the sale bought the land." This
court held that Hill, Fontaine & Co., having purchased
at a sale under an execution in their favor, were not in-
nocent purchasers for value, and that "the trust on the
claim followed and attached to the land into which the
claim was converted," notwithstanding the purchase at
the execution sale.

*Williams* v. *McIlroy* was an action of ejectment to
recover possession of land which was originally owned
by Robert R. Williams. Two of the defendants pur-
chased it from him on the 2nd of May, 1871. On
the same day he executed to them a deed, but misde-
scribed the land; and on the 21st of May, 1873, exe-
cuted to them a second deed for the same land, and
therein described it correctly. On the 19th of Septem-
ber, 1872, the plaintiffs recovered a judgment against
Robert R. Williams; and afterwards sued out an execu-
tion on it, which was levied on the land by the sheriff,
and he sold it under the execution on the 12th of July,
1873, and the plaintiff in the judgment purchased it.
After the time for redemption expired, the sheriff exe-
cuted to him a deed for the same. The defendants in
the action of ejectment were in the possession of the
land, and the two deeds executed to them were upon
record at the time it was sold under the execution.
This court held that the purchaser at the execution sale
acquired no title, and said: "The grantees in the first
and second deeds were not only in possession of the land
when appellee purchased at the sheriff's sale, but both
deeds were upon the public records, whereby appellee
had notice, when he purchased the land, of the mistake
in the first deed, and its correction by the second.
*Byers et. al.* v. *Engles*, 16 Ark. 543. Appellee pur-
chased under his own execution, parted with nothing on

his bid, and was not an innocent purchaser for value without notice, etc.    *Allen* v. *McGaughey et. al. sup.*"

In *Jones, McDowell & Co.* v. *Fletcher*, 42 Ark. 422, the facts were in part as follows :  On the first day of February, 1872, William R. Vaughan and C. R. Vaughan purchased a plantation from Jones, McDowell & Co., and took an absolute deed therefor, and executed a mortgage back, with power of sale, to Jones, McDowell & Co., for the purpose of securing so much of the purchase money as remained unpaid.    The deed to the two Vaughans, on its face, was to them as tenants in common, and the mortgage to Jones, McDowell & Co. was executed in like manner.    On the 11th of October, 1873, Thomas Fletcher, as executor of Richard Fletcher, deceased, re-covered a judgment against C. R. Vaughan.    On the 7th of November, 1873, C. R. Vaughan conveyed his interest in the land to William R. Vaughan, and he (William R.) afterwards, conveyed to E. H. English, and English to George F. Rozelle, and Rozelle to Adams, and Adams to White.    After this, on the 3rd of March, 1874, Fletcher caused an execution to be issued on his judgment, and levied on an undivided half interest in the land as the property of C. R. Vaughan.    One half of the land was sold under the execution, and Fletcher purchased at the sale, and, no redemption having been made in the year, a deed was executed and delivered to him by the sheriff on the 15th of December, 1875.    On the 17th of January, 1876, Fletcher filed his complaint against Jones, Mc-Dowell & Co., the Vaughans, and those claiming under them, alleging that Jones, McDowell & Co. had given notice that they would sell the land under the mortgage on the 24th of January, 1874 ; that the mortgage had been purchased by Rozelle with moneys belonging to the Vaughans; that the conveyances from C. R. to William R. Vaughan, and from William R. Vaughan to English, and from English to Rozelle, were fraudulent ; that an

action at law had been instituted by him for the recovery of the lands ; and asked that Jones, McDowell & Co. be enjoined from selling the land under the mortgage until his action at law could be tried. The defendant answered, and alleged that the lands were purchased with partnership funds, and were partnership property ; and the plaintiff, in reply, alleged that the Vaughans owned and held them as tenants in common, and not as partners. Assuming that they were partnership property, the court held that the judgment of Fletcher was a lien on the lands, subject to the equities of the partners and the derivative equities of their creditors ; and this lien was a valid transfer for the purpose of severing the joint estate of C. R. and William R. Vaughan, and did have that effect, as between the partners ; and that by the conveyance of C. R. Vaughan the equities of the creditors were destroyed, and his title passed to William R. Vaughan, subject to the liens of Jones, McDowell & Co. and Fletcher ; and that Fletcher acquired, by his purchase at the execution sale, one-half interest in the land, in the same manner he would have done had C. R. Vaughan been at the time of the sale a tenant in common of one-half interest in the land. Before coming to this conclusion, the judge delivering the opinion, in the course of his reasoning, remarked : "The general rule undoubtedly is, that a creditor of one of the partners buys at an execution sale with the rule *caveat emptor* before him, and that he must take notice of all equities, whether liens, strictly speaking, or not, and that at such purchase he buys only the share or interest of the debtor partner. In *Allen* v. *McGaughey*, 31 Ark. 252, the court said : ' The defendant claims as purchaser at an execution sale, to which the rule *caveat emptor* applies. He gets no warranty of title by this deed, but takes the estate incumbered with all the equities upon it, at the time of his purchase, such, only, as the defendant in the execution

had, charged with all the equities that might be asserted against him.'" It is obvious that these remarks were an *obiter dictum*, were not necessary to the decision of the case, were incidentally made, and did not affect the conclusion of the court.

In *Wilson* v. *Slaughter*, one of the defendants purchased an interest in land at a sale under an execution, with full knowledge of all the facts, and of the equities of the plaintiffs. "Under such circumstances," the court said, "the purchaser takes no greater right than the debtor himself had;" and cited *Pindall* v. *Trevor*, 30 Ark. 249; *Allen* v. *McGaughey*, 31 Ark. 252; and *Newman* v. *Davis*, 24 Fed. Rep. 609.

From the foregoing cases it appears there is no conflict as to the proper construction of section 671 of Mansfield's Digest, or as to the doctrine in cases to which it does not apply. That section relates only to deeds, bonds, or instruments of writing, for the conveyance of any real estate, or by which the title thereto may be affected in law or equity. According to the construction of it in *Byers* v. *Engles*, it was an enactment in part of the rule adopted for the protection of innocent purchasers for value without notice, as to such instruments. But it omits to mention the rights and equities which are not evidenced by writing. The act of which it is a part is upon the subject of registration, and has no reference to anything which cannot be recorded. As to the construction of it, there is no conflict of decisions by this court, but on the contrary the construction placed upon it in *Byers* v. *Engles* has been frequently reiterated and endorsed, and has stood unchallenged and approved by this court for the last thirty-eight years. There is no conflict between the doctrine of *Byers* v. *Engles* and the rule of *Allen* v. *McGaughey*. The title set up in the latter case against the purchaser at the sale under execution only existed

3. Effect of purchase by plaintiff at execution sale.

in parol, while in the former it was evidenced by a deed. The former construed a statute which only related to unrecorded deeds, bonds, and ·instruments of writing affecting titles to real estate, and held that purchasers at sales under execution with notice, actual or constructive, of such instruments of writing took the property sold subject thereto, and limited the notice by the sale, while the latter applied the rule for the protection of innocent purchasers for value, without notice, to rights and equities which exist in parol, and made a purchase by a plaintiff in an execution at a sale thereunder of no effect as to them. Both cases were cited with approval in *Williams* v. *McIlroy.* The remarks in *Allen* v. *McGaughey*, as to a purchaser at a sale under an execution only taking the estate the defendant in the judgment had, charged with all the equities that might be asserted against him, are an *obiter dictum.* All that case decides is that a purchaser of property at a sale under an execution in his own favor takes it charged with all the rights and equities, which exist only in parol, that might be asserted against the defendant. The cases which have cited it do not deny the doctrine of *Byers* v. *Engles.* They only go to the extent of holding that a purchase by any one with notice of any legal or equitable right in a third person cannot prejudice the interest of such person.

The dictum in *Allen* v. *McGaughey* is not sustained by the weight of authority. Mr. Pomeroy, in his work on Equity Jurisprudence, says: "It is a rule universally adopted, and in strict accordance with the general doctrine concerning *bona fide* purchasers, as established in this country, that, in all the instances heretofore mentioned, even where the lien of a subsequent judgment is subject to an outstanding equity, if the judgment is enforced at a sheriff's sale, and the judgment debtor's land is sold and conveyed to a *bona fide* purchaser for a valuable

consideration and without any notice, he stands in the position of any other *bona fide* purchaser who acquires the legal estate, and takes the land free from any unrecorded mortgage and any outstanding equitable interest or lien *not appearing of record* which might have affected the land in the hands of the judgment debtor. In other words, such a purchaser at the execution sale is to all intents a purchaser in good faith for a valuable consideration and without notice, as is described in the succeeding section." In the succeeding section referred to he says : "Among the other instances in which the general doctrine has been applied, and the defense sustained, by the American Courts, the following are some of the most important: Where a person becomes a *bona fide* purchaser of land at execution sale, and perfects his purchase by receiving the sheriff's deed, he stands in the same position as any other purchaser in good faith without notice who acquires the legal estate ; he takes the land free from any unrecorded mortgage or other equitable interest or lien not appearing of record which would have affected the land in the hands of the judgment debtor, and of which the judgment creditor might even have had notice." 2 Pomeroy's Eq. Jur. (2nd ed.) secs. 724, 774, and cases cited.

Mr. Freeman, in his work on Executions, says : "The purchaser at an execution sale takes his title subject to such liens, easements and equities, as it was subject to in the hands of the defendant in execution, unless he can show that he is a purchaser in good faith and without any notice, actual or constructive, of the existence of such lien, easement or equity. We have heretofore had occasion to treat of the rights of purchasers at execution sales, when brought in conflict with claims derived from unrecorded instruments made by the defendant, or based upon some other secret transaction not known to the purchaser. We then said : 'Wherever,

under the law, a deed or mortgage is valid without being recorded, a subsequently attaching judgment lien against the grantor or mortgagor will not be of any benefit to the lien holder as against the deed or mortgage. But a *purchaser* at a sale under a judgment is, to the same extent as if he were a purchaser at a private or voluntary sale, protected from claims previously acquired by third persons from the judgment debtor, of which he has no actual nor constructive notice. But if, at the time of the sale, the purchaser has actual notice of any legal or equitable right in a third person, or if, in the absence of such notice, the instrument evidencing such right is properly of record, or if possession is held under it, then the title acquired by the purchaser cannot prejudice the interests of such third person." 2 Freeman on Executions (2nd ed), sec. 336 and cases cited; 2 Freeman on Judgments (4th ed.), secs. 366, 366a.

The rule as stated by these authors, we think, is correct in principle, and is sustained by the weight of authority. 2 Leading Cases in Equity, Pt. 1 (4th Ed.), pp. 93, 94, 225 and cases cited; *Clark* v. *Campbell*, 2 Rawle, 215; *Smith* v. *Painter*, 5 Serg. & R. 223; *Oviatt* v. *Brown*, 14 Ohio, 285; *Scott* v. *Beutel*, 23 Grat. 1; *Borden* v. *Tillman*, 39 Texas, 262; *Paine* v. *Mooreland*, 15 Ohio, 435; *Ellis* v. *Smith*, 10 Ga. 253; *Butterfield* v. *Walsh*, 36 Iowa, 534; *Jackson* v. *Chamberlain*, 8 Wend. 620; *Stewart* v. *Freeman*, 10 Harris, 120; *Harrison* v. *Cachelin*, 23 Mo. 117, 126; *Waldo* v. *Russell*, 5 Mo. 387; *Halley* v. *Oldham*, 5 B Mon. 233; *Walton* v. *Hargroves*, 42 Miss. 18. It is more just and equitable than the dictum in *Allen* v. *McGaughey*, and, so far as it is consistent with the statute as construed in *Byers* v. *Engles*, should prevail. Why not? Why should third persons acquire by a purchase from a debtor at a private or voluntary sale more than they do by a purchase at a sale under an execution against him? Are third persons de-

serving of greater protection in the one case than in the other? There is no good reason for such a distinction. On the contrary, the purposes of the law in the latter case would be better subserved, purchasers at sales under execution would be more encouraged, the needless sacrifice of property at such sales would be oftener avoided, and the symmetry of our laws would be more nearly maintained, by giving in it the same protection as is given in the former case.

The case we have under consideration falls within the rule in *Allen* v. *McGaughey*. Appellants purchased at a sale under a judgment in their favor, and are, therefore, not innocent purchasers for value, and acquired nothing; for F. M. Davis, was, at the time the order of attachment was sued out against Humphrey, the real owner of the land in controversy. Mrs. Davis had paid the debt which the deed to Humphrey was executed to secure. Humphrey only had the legal title, and held it in trust until he conveyed to Mrs. Davis. Being a mortgagee in fact, he never held an interest which was subject to attachment. *Harman* v. *May*, 40 Ark. 146. The deed which he executed to Mrs. Davis was, in effect, an assignment of the right to the land which he held as a mortgagee, and nothing more.

Appellants were not predjudiced by the judgment of the circuit court; and it is therefore affirmed as to them.