Pugh *v.* Highley.

PUGH *v.* HIGHLEY ET AL.

[No. 18,518.    Filed March 9, 1899.]

EXECUTION SALE.—*Purchase by Judgment Creditor.—Secret Equities.*
—A judgment creditor who in good faith buys land at an execution
sale on his own judgment takes the land free from prior secret
equities of which he had no notice in like manner as a stranger
purchaser. *Boling* v. *Howell*, 39 Ind. 329, *Petry* v. *Ambrosher*, 100
Ind. 510, *Tarkington* v. *Purvis*, 128 Ind. 182, *Orb* v. *Coapstick*, 136
Ind. 313, and *Shirk* v. *Thomas*, 121 Ind. 147, in so far as they may
be deemed to affirm the contrary doctrine, are disapproved.

From the Grant Superior Court.    *Reversed.*

*Moon & Wolf*, for appellant.

*R. T. St. John* and *W. H. Charles*, for appellees.

BAKER, J.—Suit to foreclose vendor's lien. Appellees con-
veyed lands to one Clayborn Highley and took his unsecured
note therefor.    Afterwards appellant recovered judgment
against the grantee and caused execution to issue.    The sher-
iff levied on the lands in question.    At the sale, appellant was
the purchaser.    When the time for redemption expired, she
received a sheriff's deed for the lands.

Complaint in two paragraphs.    The first is silent concern-
ing notice to appellant of appellees' equity.    The second
charges that appellant had notice before receiving the sher-
iff's deed.    Appellant's several demurrers for want of facts
were overruled.    A demurrer was sustained to an answer of
appellant's, in which she averred that she bid at the sale, paid
the costs, and receipted the sheriff for the full amount of her
judgment, without knowledge or notice of appellees' claim.
Judgment for appellees after trial on issues completed by an-
swers of general denial and payment and reply denying pay-
ment.

The question is: Does a judgment creditor, who in good
faith buys at a proper execution sale on his own valid judg-
ment, take the land subject to prior secret equities?

The lien of a judgment attaches only to the actual interest of the debtor in the land. While the judgment remains unexecuted, the lien may be subordinated to any prior equity, though secret; for the creditor pays or surrenders nothing to or for the debtor, and continues to hold against the debtor his full claim, which the court has merely changed from a cause of action into a judgment.

A security for an antecedent debt will be upheld between the parties; but the taker will not be protected against prior secret equities, because he parts with nothing.

But a purchaser who pays the owner the value of the land takes the title clear of equities of which he has no notice.

And a creditor who, without notice, cancels a preëxisting debt in consideration of his debtor's conveying him land, is a good faith purchaser for value. To hold that the debtor may sell his land to a stranger and turn over the purchase price (money, notes, goods, land) to his creditor in satisfaction of the debt, whereby the creditor is free from claimants of secret equities; and to hold that the creditor, if the debtor conveys the land to him in payment of the debt, is liable to be affected by secret equities,—is to approve the roundabout and involved, and to condemn the straight and simple, method of accomplishing the same result,—using the land to pay the debt.

A good faith purchaser, other than the judgment creditor, at a proper execution sale on a valid judgment, who pays the sheriff the amount of his bid, acquires all the right, title and interest in the land sold (except redemption) that the judgment debtor could have conveyed to him by deed of bargain and sale. As to secret equities, he stands on the same footing with the good faith purchaser for value from the apparent owner of land. In both cases, the purchaser irrevocably parts with his money, relying and having the right to rely on getting not merely what the debtor actually owns, but what from the public records he apparently owns. In either case,—before the debtor himself conveys, or before the

sheriff conveys for him,—the holder of the prior secret equity has had it in his power to prevent any one's being misled by the false situation.   If either the subsequent purchaser or the holder of the secret equity must suffer or be postponed, it should be the latter, since his initiative made delusion by the debtor's apparent circumstances possible.

What, now, is the position of the judgment creditor who purchases at a proper execution sale on his own valid judgment?  (The premises exclude the question of the effect upon the judgment creditor of irregularities in the proceedings.) The authorities holding that he is not a good faith purchaser for value seem to be based upon either or both of two propositions: that he has parted with nothing,—has not changed his position for the worse; and that he will not be permitted to urge a claim that rises higher than the source of his right (by that, meaning the lien of his judgment).

The judgment creditor purchaser has parted with value and has changed his position for the worse.   He has paid to the sheriff the amount of his bid in cash, actually or constructively; for, if he merely receipts for payment of his judgment in whole or in part, the transaction in contemplation of law is the same as if he had paid the sheriff in cash and the sheriff had paid him in cash.  His payment is just as irrevocable as that of a stranger purchaser.   His right to vacate the satisfaction of the judgment is no greater than that of a stranger purchaser.   (And under section 765 R. S. 1881, section 777 Burns 1894, section 765 Horner 1897, there can be no right of that kind in the present case, for defects in the proceedings and want of title in the debtor are excluded from the question, by the facts.)   If the judgment creditor purchaser does not pay at the time of the sale, he is liable to judgment for the amount of the bid, and damages, interest and costs, like any other purchaser.   Section 760 R. S. 1881, section 772 Burns 1894, section 760 Horner 1897.

He has also changed his position for the worse, if he is not to be permitted to hold under the execution sale the same as a

stranger purchaser. The debtor may have directed the sheriff to levy upon the very land that was subject to the secret equity. Manifestly the judgment creditor without notice is ethically as innocent in bidding as is the stranger. By the sale, the execution becomes *functus officio* and the judgment creditor has lost the lien of his execution upon the goods and chattels of his debtor. By the sale, the judgment is satisfied *pro tanto* and the judgment creditor has lost the lien of his judgment upon the other lands of his debtor.

But, it is said, he may not urge a claim of higher value than the source of his right, that is, his judgment lien. Why not?

If an innocent stranger pays for a deed, he acquires the apparent title of the grantor and the holder of the secret equity will not be heard to say aught against it. That is, the purchaser gets more than the debtor had. Stronger than the innocent stranger's, however, are the equities of the judgment creditor purchaser without notice. For the holder of the secret equity has less opportunity to protect himself against the stranger than he has against the judgment creditor; since he may have no means of ascertaining, even by the exercise of the highest vigilance, to whom his secret trustee is about to convey, but it is only his own inaction that can prevent his learning of the judgment before sale,—in time to subordinate the lien to his rights. Shall equity offer a premium for sloth? If not, then the judgment creditor purchaser should likewise take more than the debtor had.

If an owner of an antecedent debt cancels in good faith the obligation in consideration of a deed from his debtor, he takes the title free from secret equities. That is, the purchaser gets more than the debtor had. Shall the private, maybe secret, extinguishment of the debt be held of more exalted worth in equity than the law's public and open satisfaction thereof? If not, then the judgment creditor purchaser should likewise take more than the debtor had.

If a stranger without notice buys at execution sale, his

purchase cuts off secret claims against the land. That is, the purchaser gets more than the debtor had. The law does not prohibit, but, on the contrary, encourages the judgment creditor to bid; for it is in the interest of the law's execution of the judgment and to the advantage of the debtor that he should compete with the other bidders. If a stranger purchases, the sheriff pays over the money to the judgment creditor who thereby receives satisfaction out of property on which his judgment may not have been actually a lien. Shall equity accredit the circuitous, and discredit the direct, means to the same end? If not, then the judgment creditor purchaser should likewise take more than the debtor had.

It is a misapprehension to say that the rights of a judgment creditor purchaser arise from the judgment lien and therefore continue subject to prior secret equities. His position as purchaser is in no sort of legal privity with his position as judgment creditor. When the sale is made, he ceases to be a judgment creditor. His rights thenceforward are those of a purchaser at execution sale. The contention that the rights of a purchaser at execution sale are one thing if he is a stranger and another if he is the judgment creditor is untenable in reason.

The decisions of this court, upon analysis, are found in conformity with these principles.

In *Catherwood* v. *Watson*, 65 Ind. 576, the facts were these: Daniel Watson bought land with his wife's money and took title in his own name. Subsequently Catherwood obtained judgment against one Mills on which Daniel became replevin bail. The land was sold on execution to satisfy the judgment and Catherwood purchased. Mrs. Watson sued to quiet title. Catherwood had no notice of her claim till after the execution sale. It was held that Catherwood was entitled to the land clear of Mrs. Watson's secret equity.

It appears in *Rooker* v. *Rooker*, 75 Ind. 571, that Samuel Rooker used money of his wife in buying land and took title

in his own name. His wife had instructed him to buy the land for their daughter Mary. Samuel recognized the trust and made a will devising the land to Mary. In Samuel's lifetime the Farmers' Friend Manufacturing Company recovered judgment against Samuel and bought the land at execution sale on its judgment. The company had no notice of Mary's equities. Within the year of redemption, the company sold its certificate of sale to James Rooker, who knew about the claims of Mary. After James received a sheriff's deed, the guardian of Mary, her father having died in the meantime, brought suit to quiet title. It was decided that the company was a good faith purchaser for value, and that, the rights of the parties having been fixed by the execution sale, James's knowledge of Mary's equities at the time he bought the certificate was immaterial.

*Milner* v. *Hyland,* 77 Ind. 458. Hyland bought realty with his wife's money and took title in his own name. Milner and others recovered judgments against Hyland on which executions were issued and levied on the land. Milner became purchaser at the sheriff's sale, which was made in part to satisfy Milner's own judgment. By the decision, Milner was fully protected against the secret equity of Mrs. Hyland.

*Vitito* v. *Hamilton,* 86 Ind. 137. A mortgage was made to appellee, in which the land intended to be encumbered was not described. The same landowner later executed a mortgage to appellant, in which the same mistake occurred. Appellant brought suit against the mortgagor to reform and foreclose. Appellee was not a party. At the sale, appellant was the purchaser, without notice of appellee's equity. Subsequently appellee brought suit to reform and foreclose, but appellant was not a party. At the sale, appellee was the purchaser. Held, that appellant's purchase at his own sale cut off appellee's prior secret equity.

In the ejectment case of *Pierce* v. *Spear,* 94 Ind. 127, the title resulting from an execution sale at which the judg-

VOL. 152—17

ment creditor was the purchaser was determined to be the paramount one.

Decisions to the same effect in other jurisdictions abound. *Tennant* v. *Watson*, 58 Ark. 252, 24 S. W. 495; *Newman* v. *Davis*, 24 Fed. 609; *Foorman* v. *Wallace*, 75 Cal. 552, 17 Pac. 680; *Riley* v. *Martinelli*, 97 Cal. 575, 21 L. R. A. 33, 33 Am. St. R. 209, 32 Pac. 579; *Doyle* v. *Wade*, 23 Fla. 90, 1 South. 516; *Columbus Buggy Co.* v. *Graves*, 108 Ill. 459; *Holloway* v. *Platner*, 20 Iowa 121, 89 Am. Dec. 517; *Butterfield* v. *Walsh*, 21 Iowa 99; *Walker* v. *Elston*, 21 Iowa 529; *Ettenheimer* v. *Northgraves*, 75 Iowa 28, 39 N. W. 120; *Parker* v. *Prescott*, 87 Me. 444, 32 Atl. 1001; *Woodward* v. *Sartwell*, 129 Mass. 210; *Luton* v. *Soper*, 94 Mich. 202, 53 N. W. 1054; *Adams* v. *Buchanan*, 49 Mo. 64; *Condit* v. *Wilson*, 36 N. J. Eq. 370; *Voorhis* v. *Westervelt*, 43 N. J. Eq. 644, 12 Atl. 533; *Wood* v. *Chapin*, 13 N. Y. 509, 67 Am. Dec. 62; *Wood* v. *Morehouse*, 45 N. Y. 368, 376; *Barto* v. *Bank*, 15 Hun 11; *Paine* v. *Mooreland*, 15 Ohio 435; *Sternberger* v. *Ragland*, 57 Ohio St. 148, 48 N. E. 811; *Grace* v. *Wade*, 45 Tex. 529; *Reynolds* v. *Haskins*, 68 Vt. 426, 35 Atl. 349; *Bayley* v. *Greenleaf*, 7 Wheat. 46. The decisions in Arkansas, Florida, Illinois, New Jersey and Texas apparently are controlled by statutes ranking judgment creditors with subsequent purchasers for value.

The cases of *Gifford* v. *Bennett*, 75 Ind. 528, *Wert* v. *Naylor*, 93 Ind. 431, and *Adams* v. *Vanderbeck*, 148 Ind. 92, holding that stranger purchasers at execution sales and cancelers of antecedent debts, without notice, are innocent purchasers, are also authoritative in principle. The statements in *Boling* v. *Howell*, 93 Ind. 329, *Petry* v. *Ambrosher*, 100 Ind. 510, *Tarkington* v. *Purvis*, 128 Ind. 182, and *Orb* v. *Coapstick*, 136 Ind. 313, in so far as they may be deemed to affirm that the holder of an antecedent debt who cancels his claim for a conveyance of land from his debtor takes subject to secret equities of which he had no notice, are disapproved.

Against the decisions in which was directly involved the very question that arises in the present appeal, no authority to the contrary in this State has been cited, nor has an extended investigation discovered one.     There are, however, several instances of *obiter dicta*.

In *Rooker* v. *Rooker*, 75 Ind. 571, and *Vitito* v. *Hamilton*, 86 Ind. 137, the expressions of dissent, by force of the term, are excluded from the decisions.

In *Carnahan* v. *Yerkes*, 87 Ind. 62, 67, the following language was used: "An execution creditor who bids off property at a sale upon his own execution, and applies the bid to the payment of his own judgment, is not regarded as a *bona fide* or innocent purchaser." The statement is incomplete, because silent as to notice.    Applied to a judgment creditor purchaser with notice of the prior equity, it is right; to one without notice, wrong.    The facts in the case disclose that the judgment creditor purchaser had notice, prior to the execution sale, of the senior rights of his adversary.    The quotation must be limited,—or regarded as *dictum*.

In *Shirk* v. *Thomas*, 121 Ind. 147, 153, it was said: "*Rooker* v. *Rooker*, 75 Ind. 571, *Gifford* v. *Bennett*, 75 Ind. 528, *Vitito* v. *Hamilton*, 86 Ind. 137, *  *  * have, indeed, been overruled and must be regarded as without force. *  *  * The great weight of authority, evidenced by our own well considered cases, *  *  * is that a judgment creditor who buys at his own sale obtains only the interest which the judgment debtor had in the property at the time the judgment was entered."

The facts were these:   Albert Tyner, on August 1, 1884, owned certain land.   That day he deeded it to James Tyner. The deed was recorded in May, 1885.   On December 6, 1884, James Tyner, for full value, deeded the land to Shirk's ancestor.    This deed was recorded February 18, 1885. Shirk's ancestor went into possession under his deed, and Shirk was in possession at the time of the sale under Thomas's judgment.    On October 28, 1884, Thomas caused a writ of

attachment to issue against Albert Tyner on the ground of his nonresidency. The writ was levied on the land in question. January 8, 1885, Thomas recovered judgment in attachment. July 7, 1886, order of sale was issued. July 31, 1886, sale occurred and Thomas bought. Neither James Tyner nor Shirk's ancestor nor Shirk had any notice of the attachment proceedings. The deed from Albert Tyner had been on record fourteen months, and Shirk and his ancestor had been in possession of the land nineteen months, before Thomas purchased at the execution sale.

When it was determined that the rights of Thomas as holder of a judgment in attachment were no greater than those of the holder of an ordinary judgment, and were therefore subordinate to prior equities, the case was ended. Thomas could not be an innocent purchaser at any sort of a sale that occurred more than a year after he had notice of the prior deeds. The quoted proposition is pure *dictum.*

Nor does one of the seventeen cases cited in *Shirk* v. *Thomas,* 121 Ind. 147, as supportive of the *dictum* uphold it. In *White* v. *Wilson,* 6 Blackf. 448, a misdescription in a mortgage was corrected against judgment creditors, not against purchasers at execution sale. In *Glidewell* v. *Spaugh,* 26 Ind. 319, the right of a purchaser at execution sale was held inferior to the right of one in possession under an unrecorded deed at the time of the sale. Possession was notice. In *Watkins* v. *Jones,* 28 Ind. 12, the controversy was between a wife who sought to enforce a secret trust against her husband and a judgment creditor of the husband. No question concerning rights under execution sales was involved. Nor did the question arise in *Troost* v. *Davis,* 31 Ind. 34, wherein the holder of a prior equity sought to enjoin an execution sale. In *Hampson* v. *Fall,* 64 Ind. 382, Fall sent money to his mother with which to buy land for him. She took title in her own name, and subsequently mortgaged the land to one Vawter, who knew of the trust. Vawter, for value, transferred the mortgage to Hampson, who got a deed through foreclosure.

Hampson had no notice of Fall's equity. Hampson's title was held to be paramount. There was no sheriff's sale in *Monticello Hydraulic Co.* v. *Loughry*, 72 Ind. 562. The holder of a prior equitable lien enjoined a judgment creditor from proceeding to execution sale on his judgment. In *Jones* v. *Rhoads*, 74 Ind. 510, it appears that Castor devised his lands to Daniel Rhoads, a stranger. The heirs of Castor brought an action to set aside the will. A compromise was made, under which the court entered judgment that the will was valid, the heirs quitclaimed to Daniel, and Daniel gave his notes secured by mortgage on the devised lands to Jones as trustee of the heirs for the full value of the lands. Jones as trustee later got a deed through foreclosure. Before the notes and mortgage were executed, Patton had recovered against Daniel Rhoads a judgment, on which Jacob Rhoads became replevin bail. After the foreclosure sale, Jacob paid Patton, caused execution to issue, and bought at the sale. Jacob was not a party to the foreclosure proceedings. On Jones's suit to quiet title, Jacob prevailed because the judgment lien attached to the land before the mortgage lien did. In *Sharpe* v. *Davis*, 76 Ind. 17, an ineffectual effort was made to hold, by virtue of a sheriff's deed, land to which the title never was in the judgment debtor and for which the defendant had a recorded deed before the execution sale occurred. The same *dictum* appears in the opinion, however. Judgment creditors in *Boyd* v. *Anderson*, 102 Ind. 217, failed to prevent the reformation of a prior deed made by the judgment debtor. In *Heberd* v. *Wines*, 105 Ind. 237, a wife quieted her equitable title against a judgment creditor of her husband who held the legal title in trust for her. *Blair* v. *Smith*, 114 Ind. 114, was a case of collusion between husband and wife to defraud the husband's creditors, and the rights of purchasers at execution sale were in no way involved. In *Miller* v. *Noble*, 86 Ind. 527, Miller, at his own execution sale on judgment against the widow of John Noble, purchased land that the widow took under the statute. She had married again before

the judgment was rendered. After her death during coverture, the Noble children recovered the land from Miller. The case presents no question of secret equities. *Hays* v. *Reger*, 102 Ind. 524, concerned solely the subjection of a judgment lien to a prior equity. In *Foltz* v. *Wert*, 103 Ind. 404, the purchaser at execution sale had constructive notice, and his assignee both constructive and actual notice, of the prior equities. *Wright* v. *Tichenor*, 104 Ind. 185, decides that a sale upon a judgment against the husband alone does not convey the interest of the wife. The case does not pertain in the least to the relation between purchasers at execution sale and holders of prior secret equities. In *Wright* v. *Jones*, 105 Ind. 17, creditors of a widower unsuccessfully sought to subject one-third of his deceased wife's land in fee to the liens of their judgments in spite of her will to the contrary made in pursuance of an agreement between the husband and wife. *Taylor* v. *Duesterberg*, 109 Ind. 165, was a suit by a creditor of a husband to set aside as fraudulent a deed to his wife. No question arose that related to rights under execution sales.

The statement in *Shirk* v. *Thomas* that the cases of *Rooker* v. *Rooker, Gifford* v. *Bennett* and *Vitito* v. *Hamilton* have been overruled is wholly gratuitous. They enunciate principles that are founded in reason; they are not opposed by any decision in this State on the same or similar facts; they flow with the current of modern authority; and they certainly are not overborne by the dissent in the Rooker and Vitito cases nor by the *obiter dicta* in *Sharpe* v. *Davis, Carnahan* v. *Yerkes,* and *Shirk* v. *Thomas.*

Judgment reversed, with instructions to sustain the demurrer to each paragraph of complaint.