## Artz et al. v. Yeager.

[No. 4,092. Filed April 2, 1903.]

Mortgages.—*Assignment.*—*Conveyance of Mortgaged Real Estate to Assignee.*—*Merger.*—A mortgagee sold certain promissory notes secured by mortgage and assigned the mortgage in accordance with §1107 Burns 1901. The mortgagor sold the mortgaged real estate and by *mesne* conveyances the same was conveyed to the assignee of the mortgage who sold and assigned the notes and mortgage to plaintiff without assignment of record as provided by statute, and twenty-three days thereafter sold and conveyed the real estate to defendant by warranty deed and informed him that he had bought the notes and destroyed them, and that the land was clear. Defendant made inquiry of former owners of the land, and was informed by them also that the notes were paid and destroyed. *Held,* that defendant took the real estate clear of the mortgage.

From Vigo Circuit Court; *S. M. McGregor*, Special Judge.

Suit by Warren M. Yeager against J. A. Artz and others to foreclose a mortgage. From a judgment for plaintiff, defendants appeal. *Reversed.*

*P. M. Foley* and *S. D. Royse*, for appellants.
*I. N. Pierce* and *W. A. Keerns*, for appellee.

Roby, C. J.—This action was brought by appellee Warren M. Yeager to foreclose a mortgage upon certain lands, in the complaint described. A special finding of facts was made, and a conclusion of law stated thereon, to the effect that the plaintiff was entitled to a foreclosure of the mortgage against all defendants. No defendants except appellants made any defense to the action. They excepted to the conclusion of law and assign error thereon.

It appears from the finding that one Artz, on the 25th day of February, 1893, executed to one McNabney five promissory notes for $50 each, due in fourteen, eighteen, twenty, twenty-six, and thirty-two months after date. On March 20, 1893, Artz, his wife joining, executed the mortgage in suit to secure said notes. On December 26, 1893, McNabney sold and indorsed the last four notes of the series to John W. Harris, and also made upon the margin of the record a written assignment to him of the mortgage securing them, the same being attested by the recorder and regular in all respects. On February 23, 1894, Harris sold and indorsed said notes to Vincent Yeager, and delivered them, with the mortgage in suit, to him. In June, 1894, payment of one note was made to said Yeager. The last three notes were sold and delivered by him on April 1, 1894, to appellee. Both of said last named transfers were for value. No record of any assignment of said notes and mortgage was ever recorded, except the one to Harris. On July 29, 1893, Artz and wife executed a warranty deed of the mortgaged premises to Eli H. Redmon, and the same was on said day duly recorded. On March 16, 1894, Redmon and wife conveyed the premises by quitclaim deed to John W. Harris, the said deed being recorded the day after its execution. On March 17, Harris entered into an agreement with Martin and Sarah Coohns, husband and wife, by which he was to convey said premises to them in exchange for certain real estate then owned by them. Abstracts of title were to be furnished on both sides, warranty deeds made, and the respective tracts to be free and unencumbered. They met at a law office for the purpose of carrying out the agreement. Coohns stated the conditions of the trade to the lawyer, and informed him that unless the title to the Harris tract was free from encumbrance there was to be no trade, but if he found the title free and unencumbered he should prepare deeds in accordance with said agreement. On the afternoon of said day, Coohns and Har-

Artz *v.* Yeager.

ris again met in said law office, and the lawyer then informed Coohns that he had examined the title and found it to be all right and unencumbered; Harris at the time also assuring Coohns that the title was free from liens and encumbrances. Coohns and wife then executed a warranty deed conveying their land, and receiving a deed from Harris conveying his to them. Two days following Coohns discovered that he had received a quitclaim instead of a warranty deed. He thereupon consulted a different lawyer, and related to him the agreement and circumstances, and with him called upon Harris and requested him to comply with his agreement and make a warranty deed conveying a clear and unencumbered title to said land. Harris then agreed to do so, whereupon Coohns and his lawyer examined the records in the recorder's office, and discovered the mortgage in suit of record, uncanceled, but assigned to the said Harris, and learning that one Sloss was the holder of the notes described in the mortgage, called upon him for information, and were told that the notes which he held were paid. They then called upon Redmon, the former owner of said land, and made inquiry of him, and were informed that the notes secured by the mortgage were paid and destroyed. They then called upon Harris and made inquiry concerning said notes, and were informed by him that he had bought the land and also the notes secured by the mortgage, that he had burned and destroyed the notes, and that the land was clear. Relying upon this information and the record, Coohns was induced to and did accept a warranty deed from said Harris conveying title to said land according to such agreement, which deed was duly recorded on the 21st day of March, 1894. Said Coohns and Coohns had no notice or knowledge that the plaintiff or any one else held notes other than as above set out.

It will be observed from the foregoing facts that the legal title to the mortgage in suit was in Harris on and after December 26, 1893. On February 23, 1894, the notes were

disposed of, and twenty-three days later the land was deeded to him by Eli H. Redmon, who appeared as an attorney for appellee Yeager herein, and on the same day Harris made the agreement to exchange with appellants. At the date of this transaction assignments of mortgages were entitled to record. §1107 Burns 1901. *Connecticut, etc., Ins. Co.* v. *Talbot,* 113 Ind. 373, 3 Am. St. 655. The statute in terms authorized any assignee or his personal representative to enter satisfaction or release of the mortgage of record. In *Connecticut, etc., Ins. Co.* v. *Talbot, supra,* after holding  assignments of mortgages to be within the recording act as supplemented by §1107, *supra,* the court said: "It is settled everywhere, that unrecorded assignments of mortgages are void as against subsequent purchasers, whose interests may be affected thereby, and whose conveyances are duly recorded, provided such assignments are embraced by the recording acts." This declaration of law is reiterated in the following cases: *Citizens Bank* v. *Julian,* 153 Ind. 655; *Baugher* v. *Woollen,* 147 Ind. 308; *Tulley* v. *Citizens State Bank,* 18 Ind. App. 240; *Smith* v. *Lowry,* 113 Ind. 37, 48.

Appellants are shown by the finding to have paid a valuable consideration for the real estate conveyed to them. The appellee was therefore required to allege and prove, in order to foreclose the mortgage against them, that they had "actual knowledge" of the unrecorded assignment. *Citizens Bank* v. *Julian, supra; Union Cent. Ins. Co.* v. *Dodds,* 155 Ind. 365. So far from showing such knowledge, it is by the finding expressly negatived. If knowledge of the record of the mortgage and of the fact that no release appeared thereon were treated as sufficient to put appellants upon inquiry, yet it affirmatively appears that they made the inquiry suggested by such facts, and were unable to learn, because of the duplicity of the holder of the record title to the mortgage in suit, of any outstanding equity thereto or therein. If such inquiry was prosecuted, as it

evidently was, in good faith, they can not be charged with notice of or affected by the latent equity. *Kelly* v. *Fairmount Land Co.*, 97 Va. 227, 231, 33 S. E. 598. They purchased from the apparent owner of both the land and the mortgage. They received his warranty deed. They had a right to assume that they were buying, not merely what Harris did own, but what he apparently owned as shown by the public records. *Pugh* v. *Highley*, 152 Ind. 252, 44 L. R. A. 392, 71 Am. St. 327.

"When the owner of a fee becomes absolutely entitled in his own right to a charge or encumbrance upon the same land, with no intervening interest or lien, the charge will, at law, merge in the ownership and cease to exist. Under like circumstances a merger will take place in equity, where no intention to prevent it has been expressed, and none is implied from the circumstances and the interests of the party; and a presumption in such a case arises in favor of the merger." Pomeroy, Eq. Jurisp. (2d ed.), §790. Appellants had a right to presume that such merger had taken place, and that their deed conveyed a clear an unencumbered title to them, and the holder of an unrecorded assignment of the mortgage is in no position to invoke equitable aid against them. Holding a secret equity, he had it in his power to prevent any one being misled. Failing to record his assignment, he must, as against those who were, on the faith of the record, induced to part with their property, bear the loss. *Pugh* v. *Highley, supra.*

Judgment reversed, and cause remanded, with instruction to restate conclusion of law and render judgment thereon for appellants.