**AMERICAN FAMILY MUTUAL INSURANCE COMPANY,
Plaintiff,**

v.

**Marshall G. WELTON, Defendant.**

**No. IP94–1905–C B/S.**

United States District Court,
S.D. Indiana,
Indianapolis Division.

May 15, 1996.

John W. Hammel, Yarling Robinson Hammel & Lamb, Indianapolis, Indiana, for Plaintiff.

Robert J. Doyle, Stewart Due Miller & Pugh, Indianapolis, Indiana, for Defendant.

### *MEMORANDUM ENTRY DISCUSSING ORDER GRANTING SUMMARY JUDGMENT TO PLAINTIFF*

BARKER, Chief Judge.

Plaintiff American Family Mutual Insurance Company ("American Family") has brought an action against Marshall G. Welton for declaratory judgment that it not be obligated to pay any claim by Welton arising from a fire at the property he owns. Presently before the Court is American Family's Motion for Summary Judgment. For the reasons set forth below, the Court grants American Family's motion. Accordingly, the Court enters judgment in favor of American Family Mutual Insurance Company and against Marshall G. Welton.

### I. Background

On April 27, 1988 John and Cecilia Hinds ("the Hinds"), then husband and wife, purchased a house and property located at 7307 Rose Drive, Indianapolis, Indiana ("the premises"). They purchased their home with a loan from Foster Mortgage Corporation, secured by a promissory note and a mortgage on the premises. The Hinds simultaneously obtained a homeowners insurance policy from American Family ("the policy"), which insured the premises against loss from, among other things, fire. The policy was renewed each April through April 1994

and was in effect on September 1, 1994 when a fire caused great damage to the premises.

When purchased, the policy listed on its declaration page the Hinds as the named insureds and Foster Mortgage Corporation as the mortgagee. Prior to the fire, on December 1, 1988, Foster Mortgage assigned the mortgage and promissory note on the premises to FBS Mortgage Corporation ("FBS"), and the policy's declaration page was changed to show FBS as the new mortgagee. The Hinds made monthly payments to FBS on the assigned mortgage and promissory note. The payments included amounts for the policy premium which FBS disbursed annually to American Family from escrow.

In August 1990 the Hinds obtained a $10,-316 loan from American General Finance, Inc. ("AGF") and, in return to secure repayment of the loan, gave AGF a promissory note and a second mortgage on the premises. The policy's declaration page was amended to show both FBS and AGF as mortgagees covered by the policy, and both were listed as mortgagees on the date of the fire.

The Hinds were divorced in February 1992, and thereafter they fell behind on the payments due on the FBS and AGF mortgages and promissory notes.[1] Upon this default, FBS filed an action in Marion County Circuit Court against John Hinds, Cecilia Hinds, and AGF to foreclose on its mortgage and to obtain a deficiency judgment. The circuit court entered a decree of foreclosure on July 15, 1993, finding that the Hinds were indebted to FBS for $52,123.68 in principal and interest and to AGF for $12,708.94 in principal and interest.

On September 7, 1993, the day before the foreclosure sale, Marshall G. Welton ("Welton") approached Cecilia Hinds and inquired about his purchasing the property. Welton asked if she would be interested in transferring title to the premises to him in exchange for $200 and his promise to pay off all past and future payments due on the two promissory notes and mortgages. The Hinds accepted the offer and transferred title to the premises to Welton on September 7, 1993.

FBS and AGF agreed to move to vacate the decree of foreclosure and to dismiss the foreclosure action. In return, Welton brought the FBS payments up to date and agreed to make all future payments due on the FBS mortgage. Welton also paid a lump sum of $5,000 to AGF in settlement of the second mortgage although the parties styled the transaction an "assignment" of the second mortgage. On September 9, 1993 the circuit court set aside the decree of foreclosure, cancelled the impending foreclosure sale, and dismissed the foreclosure action. FBS sent Welton a loan assumption application in December 1993 in response to Welton's inquiry about assuming the Hinds' first mortgage and promissory note to FBS; however, Welton never completed or returned the application. Nevertheless, Welton continued to make monthly payments to FBS under the first promissory note and mortgage until November 1994 following the fire when American Family fully discharged the mortgage debt to FBS.

Despite Welton's promise to assume responsibility for repayment obligations of the Hinds to FBS, the Hinds did not assign the American Family policy to Welton, nor did American Family consent to any assignment of the Hinds' policy. In fact, the Hinds did not even inform American Family or any of its agents that they had transferred title to the property to Welton or that they no longer resided at the premises after September 1993.

After receiving title to the premises, Welton leased the house and property to others. He made all of the subsequent monthly payments due on the FBS mortgage and promissory note, which included amounts for the policy premiums, through November 1994. On September 1, 1994 a fire caused between $90,000 and $100,000 in damage to the premises. Welton contacted American Family the day after the fire and made a demand for payment based on the policy's coverage of loss from fire. Informed of the fire, American Family paid $41,411.70 to FBS on November 17, 1994 to fully discharge the Hinds'

---

1. Under the divorce agreement, Cecilia Hinds was to receive title to the premises along with responsibility for maintaining the loan repayments to FBS and AGF. It is unclear whether John Hinds actually transferred title to his former wife.

debt to FBS under the Hinds' first mortgage and promissory note. However, American Family made no other payment under the policy. Furthermore, American Family filed an action in this Court on November 18, 1994 against Welton seeking a declaration that the policy does not cover any interest Welton has in the premises and that American Family has no obligation or duty to pay or satisfy any claim by Welton arising out of the September 1, 1994 fire. On January 17, 1996 American Family brought the instant Motion for Summary Judgment.

## II. Standard of Review

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate when the movant shows by pleadings, discovery, and affidavits that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Renovitch v. Kaufman*, 905 F.2d 1040, 1044 (7th Cir.1990). Summary judgment is especially appropriate where the issues in dispute are purely legal, *see, e.g., American Jewish Congress v. City of Chicago*, 827 F.2d 120, 123 (7th Cir.1987), as often occurs in cases involving contract interpretation. In such circumstances, the need for trial is avoided because there are no genuine issues of material fact that need be resolved. The parties themselves have stipulated in an April 25, 1996 joint motion that they have presented the necessary facts in this case, that no other evidence would be presented at trial, and that the matter in dispute can be resolved by the Court on American Family's motion for summary judgment.

## III. Discussion

This Court has diversity jurisdiction over this action pursuant to Title 28 United States Code section 1332, the plaintiff being a Wisconsin corporation, the defendant being a resident of Indiana, and the amount in controversy exceeding $50,000. Under Indiana law, which both parties agree controls, an insurance policy is a contract and thus subject to the same rules of interpretation and construction as are other contracts. *Eli Lilly & Co. v. Home Insurance Co.*, 482 N.E.2d 467, 470 (Ind.1985), *cert. denied*, 479 U.S. 1060, 107 S.Ct. 940, 93 L.Ed.2d 990 (1987); *Marlatt v. United Farm Bureau Family*

*Life Ins. Co.*, 640 N.E.2d 1073, 1076 (Ind. App. 1st Dist.1994); *Allstate Ins. Co. v. Kepchar*, 592 N.E.2d 694, 696 (Ind.App.3d Dist. 1992); *American Nat. Fire Ins. Co. v. Rose Acre Farms, Inc.*, 846 F.Supp. 731, 735 (S.D.Ind.1994). A court's goal when analyzing contractual language is to ascertain and enforce the parties' intent as manifested in the insurance contract. *Lexington Ins. Co. v. American Healthcare Providers*, 621 N.E.2d 332, 339 (Ind.App.2d Dist.1993); *American Family Mutual Ins. Co. v. National Ins. Ass'n*, 577 N.E.2d 969, 971 (Ind. App.2d Dist.1991). Typically, intent is easy to discern because the contractual language is clear and unambiguous. When it is not, the court must rely on established rules of contract interpretation to discover the parties' intent. "The language of the policy must be reasonably construed by the court which may not find coverage unless the language of the policy admits liability." *Red Ball Leasing, Inc. v. Hartford Accident and Indemnity Co.*, 915 F.2d 306, 308–309 (7th Cir.1990) (citing *Stockberger v. Meridian Mutual Insurance Co.*, 182 Ind.App. 566, 395 N.E.2d 1272, 1277 (Ind.App.3d Dist.1979)).

■ A careful review of the policy's terms leads to the conclusion that Welton is not covered by the policy and that American Family's motion for summary judgment should be granted. Welton was not an insured because he was not a person named in the policy legally entitled to receive payment, nor did he have an interest specifically identified in the policy, nor did he obtain an assignment of the Hinds' rights under the policy. Welton concedes that he may not recover under the policy as a named insured. (Resp.Br., p. 5) Nevertheless, he contends that the policy should cover his claim for two reasons: (1) because he had a reasonable expectation that he could collect proceeds under the policy; and (2) because he is a mortgagee under the terms of the policy and thus entitled to coverage under the policy's provision for mortgagee interests.

A. *Welton is not entitled to coverage under the doctrine of reasonable expectation.*

Welton contends that because he obtained title to the premises and continued to pay the

premiums on the policy, he had a reasonable expectation that he could enforce the policy and collect proceeds under the policy. Furthermore, Welton contends that where a party has such a reasonable expectation, equity demands that he be able to recover under the policy. (Resp.Br., p. 5) Unfortunately for Welton, it is clear that the doctrine of reasonable expectation does not apply to his case.

Indiana courts have addressed the reasonable expectation doctrine in only two insurance contexts: (1) where the policy at issue is ambiguous, *see Eli Lilly and Co. v. Home Ins. Co.*, 482 N.E.2d 467, 470–71 (Ind.1985), *cert. denied*, 479 U.S. 1060, 107 S.Ct. 940, 93 L.Ed.2d 990 (1987); and (2) where the policy's coverage is illusory, *see Davidson v. Cincinnati Ins. Co.*, 572 N.E.2d 502, 508 (Ind.App.3d Dist.1991); *Fidelity & Guaranty Ins. Underwriters, Inc. v. Everett I. Brown Co., L.P.*, 25 F.3d 484, 490 n. 6 (7th Cir.1994). *See also Hastings Mutual Ins. Co. v. Webb*, 659 N.E.2d 1049, 1054 (Ind.App.1995) (noting the above two contexts in which the doctrine has been applied). Neither of these conditions exists in this case. First, Welton does not claim that the policy is ambiguous in any way. Second, Welton does not claim that the policy's coverage is illusory, nor could the policy be so construed where it clearly covered the Hinds' liability to FBS and resulted in American Family's payment to FBS of $41,411.70 to fully discharge the Hinds' debt to FBS under the Hinds' first mortgage and promissory note. *See Lexington Ins. Co. v. American Healthcare Providers*, 621 N.E.2d 332, 339 (Ind.App.2d Dist.1993) (coverage of a policy is not illusory unless the policy would not pay benefits under any reasonably expected set of circumstances); *Fidelity & Guaranty Ins. Underwriters*, 25 F.3d at 490 (same). *Cf. Meridian Mutual Ins. Co. v. Richie*, 544 N.E.2d 488 (Ind.1989) (where insured could have benefitted from his underinsured-motorist coverage, policy did not provide illusory coverage).

The three cases on which Welton bases his contention that he had a reasonable expectation of coverage do not, in fact, support his contention. Two of the cases involve claims by individuals who were identified by name in the policy and whose interests were identified in the policy. The third case does not even involve an insurance dispute. In *Property Owners Ins. Co. v. Hack*, 559 N.E.2d 396 (Ind.App. 1st Dist.1990), the Hacks were vendors under a real estate installment contract who sought coverage under the buyer's insurance policy after the buyer purposefully set fire to the property. Under the sales contract, the buyer was obligated to maintain fire insurance on the property. After the buyer allowed the policy to lapse, the insurer agreed to amend the insurance policy by adding an "additional interest schedule" listing the Hacks as contract holders. The court held that the vendors could recover after finding that the policy was ambiguous and that the Hacks had a reasonable expectation that their interest as vendors was covered. As the court stated, "Here, the Hack's reasonable expectation was that their interest would be protected, and it was [the insurer's] responsibility either to see that those interests were protected or to refuse to write the policy." *Id.* at 402. Unlike the Hacks, who were specifically identified in the insurance policy as additional insureds and whose interest was specifically identified in the policy, Welton was unknown to American Family and neither he nor his interest in the premises were listed on the policy.

In *American Economy Ins. Co. v. Liggett*, 426 N.E.2d 136 (Ind.App.3d Dist.1981), the defendant claiming a right to recover was an "insured" by definition in the policy because she was the spouse of the named insured and was co-owner of the covered property. The question before the court was whether the defendant was entitled to recover even though her husband allegedly had set the fire that destroyed the house. The court stated that the defendant's reasonable expectations of coverage should be enforced because she was a named insured and had a specifically identified property interest covered by the policy. These facts alone distinguish that party's circumstances from Welton's. Apart from the defendant's reasonable expectations, the court further noted that the insurance contract itself did not specifically deny coverage in the case that the insured did anything to increase the risk of loss. Nor would any of the objectives of recognizing an

implied exception to coverage be furthered where the defendant's husband had perished in the fire.

The third case Welton cites as authority is completely inapposite. In *Morsches Lumber, Inc. v. Probst*, 180 Ind.App. 202, 388 N.E.2d 284 (Ind.App.3d Dist.1979), the issue before the court was whether the owner of a barn could sue the builder of the barn for negligent construction after the barn was destroyed in a windstorm. The builder argued successfully on appeal that the owner could not seek recovery from the builder where the owner failed to carry fire and windstorm insurance. The court held that the owner's agreement to obtain insurance constituted an agreement to limit the owner's recourse against the builder solely to the policy's proceeds, even where loss was caused by the builder's negligence. The case is thus completely inapposite to Welton's contention that he is a beneficiary of the policy. Welton's claim that he had a reasonable expectation of coverage is without support.

B. *The policy does not cover Welton's claim on the grounds that he is a "mortgagee" under the terms of the policy.*

■ Welton next argues that he is entitled to coverage because he received a valid assignment of the Hinds' second mortgage from AGF and, therefore, as a mortgagee, has an insured interest equal to the mortgage obligation owed by the Hinds to AGF. There are two principal reasons why Welton is not a mortgagee under the terms of the policy. First, Welton is not listed as a mortgagee under the terms of the policy's mortgage clause and therefore is not entitled to receive any payment. Condition 16 to Section I of the policy requires that a mortgagee be named in the policy. Condition 16 states:

16. Mortgage Clause.

The word "mortgagee" includes trustee or contract seller under a land contract.

*If a mortgagee is named in this policy,* any loss payable on buildings will be paid to the mortgagee and you, as interests may appear. If more than one mortgagee is named, the order of pay-

ment will be the same as the order of precedence of the mortgages. \* \* \*

(Complaint, Exhibit A, p. 8) (emphasis added) Condition 9 to Section I of the policy also requires that the mortgagee be named in the policy. Condition 9 states:

9. Loss Payment. We will adjust all losses with you. We will pay you *unless some other party is named in the policy* and is legally entitled to receive payment.

(Complaint, Exhibit A, p. 8) (emphasis added). In this case, Welton is not listed as a mortgagee in the policy nor is he named in any capacity in the policy. Therefore, he is not entitled to receive any payment as a mortgagee under the terms of the policy.

Welton contends that even though he was not listed as a mortgagee in the policy, he should be regarded as such as a matter of equity. The only case he cites for this proposition, *Continental Ins. Co. v. Bair*, 65 Ind. App. 502, 114 N.E. 763 (1917), does not support his position. In that case, the insurer's agent verbally consented to the owner's mortgage of the insured property. After a fire destroyed the property, the insurer argued that the policy was void because the owner violated a prohibition in the policy against giving a mortgage in the property without the insurer's consent. The court held that the agent's verbal consent was sufficient to bind the insurer. Rather than support his position, *Bair* actually cuts against Welton because the basis of the court's decision was an agreement between the insurer's agent and the owner regarding the mortgage. In the present case, American Family made no agreement to insure any interest Welton may have had as a mortgagee and was not even aware that the Hinds no longer owned the premises.

■ A second and more fundamental reason that Welton is not entitled to receive payment as a mortgagee is that he does not have any interest as a mortgagee in the premises. *See* 5A Appleman Insurance Law & Practice, § 3401, p. 295 (a clause providing that the loss should be payable to a mortgagee requires that such party have a mortgage on the property, and where the named insured owes no mortgage debt, the clause is

invalid). When the Hinds transferred title to the premises to Welton on September 7, 1993, Welton became the owner of the premises in fee simple and was obligated to make the Hinds' mortgage payments until the mortgage debts were fully discharged. When, in turn, Welton paid AGF $5,000 for the "assignment" of the second mortgage, the mortgage debt was extinguished, the Hinds' debt to AGF was discharged, and the second mortgage lien merged with Welton's fee simple ownership interest as a matter of law. *See Bunch v. Grave,* 111 Ind. 351, 12 N.E. 514, 516 (1887); *Artz v. Yeager,* 30 Ind.App. 677, 66 N.E. 917, 918 (1903). *See also* 55 Am.Jur.2d *Mortgages* § 1405, pp. 1103–04 ("The general rule is that a grantee of mortgaged premises who has assumed the payment of the mortgage, and thereby makes the mortgage debt his own, is not entitled to take an assignment of the mortgage and hold it as an independent title; if he takes such an assignment, the mortgage is thereupon merged and discharged"). That Welton and AGF may have styled their transaction as an "assignment" did not preserve the mortgage so as to make Welton a mortgagee by assignment because any mortgage obligation that continued after Welton and AGF's transaction would have been wholly fictional. Because he had agreed to make all of the Hinds' payments under the second mortgage, Welton, as putative mortgagee, would have been entitled to receive payment from none other than himself—Welton would have been both the obligor and obligee.

■ In response, Welton contends that he has an existing mortgage interest in the premises because he did not intend for his interests as fee-simple owner and mortgagee to merge. Under the anti-merger doctrine, Indiana courts preclude discharge and merger only to protect the mortgagee's right to collect the mortgage debt as against junior lienholders. As Judge McKinney of this Court explained in *Brightwell v. United States,* 805 F.Supp. 1464 (S.D.Ind.1992):

The underlying purpose of this "anti-merger" rule—i.e., the benefit it is meant to confer—is protection of the mortgagee's priority. Specifically, the rule allows the mortgagee to prevent junior lienholders from stepping up in priority, foreclosing, and reducing the mortgagee's already-diminished recovery, because it bars all but the mortgagee from re-foreclosing or re-selling the property, and guarantees the mortgagee's priority in any proceeds. Put simply, the anti-merger rule gives a mortgagee first crack at any money generated by foreclosures on the property, ahead of any junior lienholders, until it has been paid what it is owed in full.

*Id.,* at 1474 (internal citation omitted). Case-law makes clear that courts employ the anti-merger doctrine as a means of protecting a foreclosing mortgagee's priority against junior lienholders. Because Welton is neither foreclosing on the premises or attempting to protect its interest in the premises against junior lienholders, his reliance on the anti-merger doctrine is meritless.

Welton's more general contention that it would be inequitable for him to "receive[ ] nothing in exchange for maintaining the policy of insurance on the property" is also meritless. As explained above, Welton maintained the policy by assuming the Hinds' obligation to make monthly payments to FBS, a portion of which went into escrow and paid for the annual policy premiums. Welton's agreement to make monthly payments to FBS was not in exchange for nothing, but rather was in return for the Hinds' agreement to convey to Welton title to the premises and for FBS's agreement to drop its foreclosure action.

■ Welton's third brief contention that American Family should pay him the difference between the amount the Hinds were indebted to FBS at the time of foreclosure ($45,974.60) and the amount American Family ultimately paid FBS ($41,411.70) is similarly unavailing. After Welton assumed the Hinds' obligations, Welton's monthly payments to FBS clearly worked to reduce the mortgage debt owed to FBS.[2] The reduced

2. It is unclear whether the Hinds or Welton would have been liable to FBS in the event that Welton were subsequently to default on the

monthly payments to FBS. The Court need not resolve the matter.

debt, in turn, led to American Family's ultimately having to pay FBS less in coverage. The difference between the two amount, $4,562.90, is not an amount to which Welton is equitably entitled, rather it represents a portion of those past and future payments that he agreed to make to FBS in return for the Hinds' conveyance to him of title to the premises. Because Welton does not contend that he was deprived of the benefit of his bargain with the Hinds, he is not entitled to recover all or part of his consideration.

### IV. Conclusion

Having found the Defendant's arguments unavailing, the Court finds that the homeowners policy issued by American Family Mutual Insurance Company to John and Cecilia Hinds does not cover any interest Welton has in the property located at 7307 Rose Dive, Indianapolis, Indiana, and that American Family Mutual Insurance Company is under no obligation to pay any claim brought by Marshall G. Welton arising out of any interest he has in the premises. Consequently, the Court grants declaratory judgment, in favor of Plaintiff American Family Mutual Insurance Company and against Defendant Marshall G. Welton.

It is so ORDERED.